IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br>SADID MEDINA-RIVERA [1], *et al.*,<br><br>**Defendants.** | **Criminal No.** 17-622 (FAB) |

**SEALED MEMORANDUM AND ORDER**

BESOSA, District Judge

Before the Court is the United States of America ("United States")'s motion requesting that this Court abstain from appointing learned counsel for 90 days. (Docket No. 8.) For the reasons set forth below, the United States' motion is **DENIED**.

I.  **Background**

According to the United States, 13 defendants stand charged with death penalty-eligible offenses.[1] (Docket No. 8 at p. 1.) The Capital Review Committee of the Department of Justice is currently evaluating whether the government will, in fact, seek the death penalty against any of the 13 named defendants pursuant

---

[1] The 13 death penalty-eligible defendants are: (1) Sadid Medina-Rivera, (2) Yamil Vazquez-Rivera, (3) Luis Ayala-Garcia, (4) Giovanni Ortiz-Soto, (5) Richard Franco-Perez, (6) Wilfredo Rojas-Suarez, (7) George Franco-Perez, (8) Nelson Rivera-Maldonado, (9) Angel Cruz-Vazquez, (10) Miguel Martinez-Candelaria, (11) Abimael Narvaez-Rosa, (12) Nelson Gonzalez-Gonzalez, and (13) Juan Rivera-Serrano. (Docket No. 3.)

Criminal No. 17-622 (FAB)                                                       2

to the protocol set forth in the United States Attorney's Manual, section 9-10.060.  Id.  Well-established procedures within the Department of Justice require that the Capital Review Committee shall, absent extenuating circumstances, "review the materials submitted by the United States Attorney or Assistant Attorney General" before determining whether the government will seek the death penalty. United States Attorney's Manual § 9-10.130.[2] Moreover, defense counsel may present evidence and "argument in mitigation" against the death penalty to the Capital Review Committee.  Id.

## II. Discussion

Beyond dispute is the profound importance of adequate representation for persons exposed to the death penalty.  The quality of defense in capital cases is of such unique consequence that Congress enacted statutory safeguards to reduce error in the representation of persons exposed to capital punishment.  Pursuant to 18 U.S.C. § 3005 ("section 3005"), federal capital defendants are entitled to representation by two attorneys, one of whom must be "learned in the law applicable to capital cases."  18 U.S.C. § 3005.  In pertinent part, this section provides that:

---

[2] Pursuant to the Federal Death Penalty Act, the United States must serve notice on defendants charged with death penalty-eligible offense indicating whether the United States will seek capital punishment.  18 U.S.C. § 3593(a).

Criminal No. 17-622 (FAB)                                                3

>       Whoever is indicted for treason or other capital crimes
>       shall be allowed to make his full defense by counsel;
>       and the court before which the defendant is to be tried,
>       or a judge thereof, shall promptly, upon the defendant's
>       request, assign 2 such counsel, of whom at least 1 shall
>       be learned in the law applicable to capital cases.

Id.  Furthermore, Local Rule 144A ("Rule 144A") states that when defendants are financially unable to attain retained counsel, the court shall appoint at least one attorney "learned in the law applicable to capital cases" "at the earliest practical opportunity once a defendant is charged in a capital case."[3]  Local Rule 144A(a)-(c).

The relevant inquiry for purposes of the United States' motion is whether the requested 90-day abeyance comports with Congress' directive that the Court "promptly" appoint learned counsel to represent the 13 death penalty eligible defendants.  The Court finds that no valid justification exists for denying defendants

---

[3] Pursuant to Local Rule 144A, an attorney qualifying as "learned counsel" must:

   (1) Be a member of the bar of this Court, or be admitted to practice *pro hac vice* on the basis of his or her qualifications:

   (2) have at least five years experience in the field of federal criminal practice;

   (3) have prior experience, within the last three years as defense counsel in the trial of no fewer than three serious and complex felony cases that were tried to completion in federal court, and have prior experience, within the last three years, as defense counsel in a capital case; and have demonstrated the necessary proficiency and commitment which exemplify the quality of representation appropriate to the defense of capital cases.

Local Rule 144A(d).

Criminal No. 17-622 (FAB)                                                          4

that to which they are entitled pursuant to section 3005 and Local Rule 144A.

### A. A 90 Day Delay Contravenes this Court's Obligation to Appoint Learned Counsel in a Prompt Manner

The First Circuit Court of Appeals' decision in In re Sterling-Suarez is dispositive. 306 F.3d 1170 (1st Cir. 2002). The Sterling-Suarez Court granted a death penalty-eligible defendant's writ of mandamus, expounding upon the term "promptly" within the meaning of section 3005 and ordering the trial court to appoint learned counsel. Id. According to the First Circuit Court of Appeals, "promptly" "means promptly after the indictment, not (as the government assert[ed]) only after the Attorney General has made a determination to seek the death penalty." Id. at 1170. Indeed, courts shall appoint learned counsel "reasonably soon after the indictment and prior to the time that submissions are made to persuade the Attorney General not to seek the death penalty." Id. at 1173.

Sterling-Suarez compels the Court not to delay in appointing learned counsel upon a death penalty-eligible defendant's request, and certainly not for 90 days. The defendant in Sterling-Suarez requested learned counsel the day after indictment. Id. at 1170. The presiding judge denied this request just 21 days later, dismissing the necessity of learned counsel

before the Department of Justice decided to seek capital punishment. Id. at 1172. The United States requests that this Court preemptively do what the First Circuit Court of Appeals proscribed in Sterling-Suarez by withholding from defendants access to death penalty-qualified representation for three months. Should the defendants in this case request learned counsel, the Court will grant their request without regard to the United States Attorney's Office internal decision-making process.

The United States predicates the motion to suspend the appointment of learned counsel on a *non-sequitur*: that because the "Court of Appeals has not specially defined exactly at what time learned counsel must be appointed in a federal capital case," the Court is free to impose a 90 day delay. (Docket No. 8 at p. 2.) Although the First Circuit Court of Appeals refrained from setting forth a bright line rule, its holding is unambiguous. The triggering event for the appointment of learned counsel is the filing of the indictment. See In re Sterling-Suarez, 306 F.3d at 1172-73 ("As [section 3005] is written, the word 'promptly' is used in relation to a prior event — namely, the indictment of the defendant upon a capital crime"); United States v. Morrison, Case No. 04-699, 2006 U.S. Dist. LEXIS 93830 *5 (E.D.N.Y. Aug. 4, 2006) ("[E]ntitlement [to learned counsel] attaches upon indictment and not when the government decides to seek the death penalty"); United

Criminal No. 17-622 (FAB)                                          6

States v. Cordova, 806 F.3d 1085, 1101 (D.C.C. 2015) ("Even among courts that disagree as to whether [learned counsel] is required after the government announces that it will not seek the dealt penalty, there is agreement that 'prompt' means promptly after indictment, and not later").

This case falls within the timeframe during which the appointment of learned counsel may prove to be most crucial for death penalty-eligible defendants: after indictment and before defendants' submissions to the Capital Review Committee.[4] The death penalty-eligible defendants were indicted under seal on December 8, 2017. (Docket No. 3.) The United States has yet to decide whether it will seek the death penalty. Should the United States proceed without foreclosing the possibility of capital punishment, the defendants may submit evidence and mitigation arguments in opposition to the death penalty. United States Attorney's Manual, §9-10.030. The Court is cognizant that a unilateral decision by the United States not to seek the death penalty will render learned counsel unnecessary. See United States

---

[4] From a pragmatic perspective, a delay in the appointment of learned counsel would only prolong an already time-consuming task. Experience within this district demonstrates that employment of learned counsel is an arduous undertaking for a number of reasons. For instance, the Constitution for the Commonwealth of Puerto Rico prohibits capital punishment. Laws of PR Ann., tit. 1, Const. art. II, § 7. See United States v. Colon-Miranda, 985 F. Supp. 31, 33 (D.P.R. 1997) (Fuste, J.). Because of the lack of qualified attorneys in Puerto Rico, courts must often appoint learned counsel from the continental United States. Id.

Criminal No. 17-622 (FAB)                                                    7

v. Pesante-Lopez, 582 F. Supp. 2d 186 (D.P.R. 2008) (Besosa, J.) (holding that defendants are no longer entitled to learned counsel once the United States declines to seek capital punishment). Nonetheless, until such time as the United States represents to the Court that it will not seek the death penalty, section 3005 and precedent require the appointment of learned counsel promptly.

The United States further argues that a 90-day delay in the appointment of learned counsel conserves government resources. The Court does not dispute that "appointing learned counsel to each of these defendants will entail an enormous cost." (Docket No. 8 at p. 2.) This argument is no reason, however, to desist from appointing learned counsel. In re Sterling-Suarez, 306 F.3d at 1174 ("There is certainly no indication that requiring employment [of learned counsel] at the earlier stage will necessarily be a waste of money"). Contrary to the United States' position, the early appointment of learned counsel may "make the difference as to whether the Attorney General seeks the death penalty (and perhaps whether defendant lives or dies)." Id.; see also United States v. Pena-Gonzalez, 63 F. Supp.2d 358 (D.P.R. 1999) (Fuste, J.) ("Indeed, the appointment of specifically-qualified counsel constitutes the greatest block to a fast switch to a death penalty case"); Cordova, 806 F.3d at 1101 ("Surely, if the government decides not to seek the death penalty, then the

Criminal No. 17-622 (FAB)                                                    8

penalty phase is won before trial, and a second lawyer has proven his worth"). Accordingly, the Court has no reason to adopt a self-imposed moratorium on the appointment of learned counsel.

**IV. Conclusion**

For the reasons expressed above, the Court **DENIES** the United States' motion that the Court abstain from appointing learned counsel for 90 days. (Docket No. 8.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, January 17, 2018.

> s/ Francisco A. Besosa
> FRANCISCO A. BESOSA
> UNITED STATES DISTRICT JUDGE